303 P.3d 529

**BULK TRANSPORTATION,**
Petitioner Employer,

**Zurich American Insurance Co., Petitioner Carrier,**

v.

The **INDUSTRIAL COMMISSION OF ARIZONA,** Respondent,

**James Freeman, Respondent Employee.**

No. 1 CA–IC 12–0035.

Court of Appeals of Arizona, Division 1, Department B.

May 7, 2013.

Lester & Norton, P.C. by Steven C. Lester, Phoenix, Attorney for Petitioners Employer/Carrier.

Andrew Wade, Chief Counsel, The Industrial Commission of Arizona, Phoenix, Attorney for Respondent.

Law Office of Jared O. Smith by Jared O. Smith, Safford, Attorney for Respondent Employee.

## OPINION

HOWE, Judge.

¶ 1 Zurich American Insurance Company and Bulk Transportation (collectively, "petitioners") challenge an award of workers' compensation benefits to James Freeman. Petitioners contend that the Administrative Law Judge ("ALJ") erroneously awarded Freeman facial disfigurement benefits because Freeman sustained a permanent scar on his neck, not on his face. Because the ALJ did not err, we affirm the award of benefits.

## FACTS AND PROCEDURAL HISTORY

¶ 2 On October 8, 2010, Freeman, a truck driver, was transporting sulfuric acid for his employer. He noticed that acid was leaking from the hose of his truck and replaced the hose. Unfortunately, the replacement hose became loose and sprayed acid on his face and neck. Freeman was transported to the Maricopa County Burn Unit for treatment.

¶ 3 The Industrial Commission of Arizona ("the Commission") examined Freeman for possible facial disfigurement. On July 12, 2011, the Commission issued its findings and award for scheduled permanent disability. Without elaboration, the Commission found that Freeman sustained permanent facial disfigurement and was entitled to an award of $2,069.89 per month for 4.5 months, $9,314.51 in total. For reasons not clear from the record, the Commission subsequently rescinded the award.[1]

¶ 4 Freeman requested a hearing to address compensation for his facial and neck scarring. At the hearing, the ALJ heard testimony about Freeman's injuries and his medical evaluation and treatment. The ALJ expressed concern about whether Freeman's injuries constituted facial disfigurement, and Freemen testified about the injury on his neck that he claimed was disfiguring. The ALJ measured the scar on Freeman's neck and determined that the scar's size was between four and five inches and was visible at more than twenty feet. The ALJ used a visual observation chart from the Commission's 1998 Claims Processing Manual to assist in making his determination, but noted that the claims division manager stated that they "really don't rely on that much anymore." The chart recommended that a scar that fit this description should be compensated for up to twelve months.

¶ 5 The ALJ subsequently found that "[o]bservation of the applicant's face/neck showed scarring on the right side of his neck visible at more than 20 feet and discoloration of the right side of his face." He noted that

the area below the jawline and on the applicant's neck … clearly constitutes scarring or disfigurement. The issue there is whether the neck is included in the head or face pursuant to [A.R.S. § 23-1044(B)(22)] when assessing facial disfigurement.

He further noted that the Commission's 2011 Claims Seminar Manual states that regarding facial disfigurement, "scars on the face, neck or ears are compensable if they are clearly visible when the injured worker is fully dressed, i.e., a scar must cause an observable marring or impairment of the natural appearance of the injured worker." The ALJ concluded that Freeman's neck scar was compensable under Arizona Revised Statutes ("A.R.S.") section 23-1044(B)(22) (West 2013),[2] measured more than four to five inches in size and was visible at a distance of more than twenty feet. The ALJ relied on § 23-1044(B), which provides that compensation for permanent disabilities shall be awarded at fifty-five percent of the average monthly wage of the injured employee, and awarded Freeman $2,069.89 per month for twelve months, or a total of $24,838.68.

¶ 6 Petitioners requested review, but the ALJ affirmed his previous findings and award. This special action followed.

---

1. The record is not clear why the award was rescinded, but the ALJ noted that it was for good cause. Counsel suggested that the award was premature because it was issued while a previous Request for Hearing was scheduled. Whatever the reason, the rescinded award has no evidentiary value. *Bratz v. Indus. Comm'n,* 178 Ariz. 359, 361, 873 P.2d 697, 699 (App.1994).

2. We cite the current version of the applicable statutes because no revisions material to this decision have since occurred.

220

## DISCUSSION

¶ 7 Petitioners argue that the ALJ erred in interpreting the language "permanent disfigurement about the head or face" in A.R.S. § 23–1044(B)(22) to include Freeman's neck scar. In reviewing the Commission's findings and awards, this Court defers to the ALJ's factual findings but reviews questions of law de novo. *Gutierrez v. Indus. Comm'n*, 226 Ariz. 1, 2, ¶ 2, 243 P.3d 604, 605 (App.2010). We consider the evidence in the light most favorable to upholding the ALJ's award. *Id.*

¶ 8 In interpreting a statute, we look to the statute's language as the most reliable indicator of its meaning. *Bridgestone Retail Tire Operations v. Indus. Comm'n*, 227 Ariz. 453, 455, ¶ 7, 258 P.3d 271, 273 (App.2011). If the language is clear and unambiguous, we apply it without resorting to other methods of interpretation. *Id.* We give words their ordinary meaning unless the statute's context requires otherwise, A.R.S. § 1–213; *Ariz. Dep't of Econ. Sec. v. Lee ex rel. Cnty. Of Maricopa*, 228 Ariz. 150, 152, ¶ 7, 264 P.3d 34, 36 (App.2011), and consider respected dictionaries to determine the ordinary meaning, *Loftus v. Ariz. State Univ. Pub. Safety Pers. Ret. Sys. Local Bd.*, 227 Ariz. 216, 223 n. 10, ¶ 27, 255 P.3d 1020, 1027 n. 10 (App.2011).

¶ 9 Applying these principles, Freeman's neck scar was compensable under § 23–1044(B)(22). That statute provides for compensation for permanent disfigurement "about the head or face":

> For permanent disfigurement about the head or face, which shall include injury to or loss of teeth, the commission may, in accordance with the provisions of § 23–1047, allow such sum for compensation thereof as it deems just, in accordance

with the proof submitted, for a period not to exceed eighteen months.

Although the statute does not expressly state that permanent disfigurement of the neck is compensable, the statute includes such disfigurement in the phrase "about the head or face." The ordinary definition of "about" includes "on all sides; in every direction; around" and "in the vicinity; near." *Webster's Third New International Dictionary* 5 (3d ed. 2002); *see also The American Heritage Dictionary* 4 (New College ed. 1979) (defining "about" to mean "approximately; nearly" or "all around; on every side"). Because the neck is "around," "near," and "in the vicinity" of a person's head or face, a permanent disfigurement of the neck is compensable.[3]

¶ 10 Petitioners take issue with the ALJ's ruling, arguing that a permanent disfigurement of the neck is not included within § 23–1044(B)(22) because "neck" is not listed in the statute. But as explained, the statute's phrase "permanent disfigurement about the head or face," given the ordinary meaning of the word "about," necessarily includes permanent disfigurement to the neck.[4]

¶ 11 Petitioners also argue that "about" is merely synonymous with "on," and a neck disfigurement is not "on" the head or face. But even petitioners' own authority for this proposition does not define "about" so narrowly, and agrees with the word's ordinary definition. *See* Merriam–Webster, http://www.merriam-webster.com/dictionary/about (last visited April 9, 2013) (defining the word as "reasonably close to"; "almost"; "on all sides, around" "in the vicinity"). Nothing indicates that the Legislature intended to restrict the meaning of "about" to "on." *See State v. Garcia*, 219 Ariz. 104, 106, ¶ 6, 193 P.3d 798, 800 (App.2008) (stating that we will assume that "the legislature has given words their natural and obvious meanings unless

---

3. Of course, any scar or other mark on the neck must also cause "an observable marring or impairment of the natural appearance of [the claimant]" to qualify as "disfigurement" under § 23–1044(B)(22). *Funk v. Indus. Comm'n*, 167 Ariz. 466, 469, 808 P.2d 827, 830 (App.1991). Although petitioners contest that the neck is included within the language "about the head or face," they do not contest that Freeman's scar was a disfigurement.

4. Petitioners argue that the ALJ erroneously relied on the Commission's 2011 Claims Seminar Manual in determining whether Freeman's neck scar was compensable under § 23–1044(B)(22). Our conclusion that the language of the statute includes disfigurements such as Freeman's renders this argument moot.

otherwise stated"). The ALJ did not err in ruling that Freeman's neck scar is compensable under the statute.

¶ 12 Petitioners further argue that the ALJ's determination was arbitrary and unreasonable because he considered a visual observation scale from the 1998 Claims Processing Manual in determining the amount of the award even though the Commission's claims division manager had stated that the manual was not relied on "that much anymore." But nothing shows that the ALJ's determination was arbitrary or capricious. Section 23–1044(B)(22) provides discretion in the amount of the award, as long as it does not exceed eighteen months: The commission may "allow such sum for compensation thereof as it deems just, in accordance with the proof submitted, for a period of not to exceed eighteen months." Here, the ALJ considered the evidence and observed the scarring on Freeman's body and found that Freeman sustained a permanent scar. Based on this evidence, the ALJ properly exercised his discretion to award $2,069.89 per month for twelve months. The award was within the statutory limit, and nothing precluded the ALJ from consulting the visual observation scale in the 1998 Claims Processing Manual in determining the award. The ALJ did not act arbitrarily or capriciously in determining the award of benefits to Freeman.

## CONCLUSION

¶ 13 We affirm the award of benefits to Freeman.

CONCURRING: ANDREW W. GOULD, Acting Presiding Judge, and JOHN C. GEMMILL, Judge.